## Lucas *versus* The Sunbury and Erie Railroad Co.

The lease of a railroad reserving rent, in trust for the benefit of the creditors of the lessors, is an assignment within the meaning of the Act of 24th March 1818, and must be recorded within thirty days in the proper county.

Guy *v.* McIlree, 2 *Casey* 92, distinguished.

Such a lease, by the Philadelphia and Sunbury Railroad Company, was properly recorded in Northumberland county.

ERROR to the District Court of *Philadelphia.*

This was an attachment execution issued on a judgment for $787.98, obtained by Robert Lucas against The Philadelphia and Sunbury Railroad Company, and served on The Sunbury and Erie Railroad Company, as garnishees.

On the 26th March 1857, the Philadelphia and Sunbury Railroad Company made an agreement with the Sunbury and Erie Railroad Company, which connected with it, by which the latter was allowed to run its cars upon the road of the former, erect buildings on the line thereof for cars and engines, and bound itself, in consideration of these privileges, to provide and maintain suitable motive power and cars, and persons to conduct them, and to run and haul the same, and cars of other persons, on the said road. The agreement stipulated the amount to be charged by said Sunbury and Erie road, for hauling and transportation, and provided for the share of the net earnings which each road was to have. The sixth section of the agreement is as follows:—

" Sixth. That the said party of the first part shall and will pay the remaining earnings of the local trade and through trade, when

[Lucas *v.* The Sunbury and Erie Railroad Company.]

received by them in cash and not required to be retained and applied by the said party of the first part for the purposes herein provided; and the same are hereby, by said party of the second part, assigned, transferred, appropriated, and shall be applied and paid in manner following, viz. (but without any liability in the said party of the first part, in any manner, to see to the application of said sums of money or any of them): The said party of the first part shall first pay thereout, unto Stephen Bittenbender, the sum of seven thousand dollars; being the amount of the indebtedness of said party of the second part to him, for repairs of cars, with lawful interest thereon till paid. And after payment thereof, shall next pay to Alfred K. Fisk, the sum of eighteen hundred dollars; being the amount of the indebtedness of said party of the second part to him, for services as superintendent, with lawful interest till paid. And after payment thereof, shall pay over and deliver all other sums which would, during the continuance of this contract, become due and payable to the said party of the second part, into the hands of Edward S. Whelen, of Philadelphia; and which sums, when received by him, shall be held in trust to pay and appropriate the same to the payment of the interest upon the several bonds of the said party of the second part, secured by mortgage, according to their respective dates and priorities; that is to say, first to pay the interest in full, or if not sufficient therefor, *pro rata*, upon the bonds secured by mortgage, dated the 5th day of August, A. D. 1852, made by said party of the second part to Shepherd Knapp, to secure the sum of $700,000, as therein mentioned, and recorded in Northumberland county, state of Pennsylvania, in Mortgage Book No. 6, page 632, &c.; second, to pay the interest in full, or if not sufficient therefor, *pro rata*, upon the bonds secured by mortgage, dated the 23d day of July, A. D. 1855, made by said party of the second part to Joseph R. Priestley, to secure the sum of $500,000, as therein mentioned, and recorded in said county, in Mortgage Book No. 6, page 237, &c.; and third, to pay the interest in full, or if not sufficient therefor, *pro rata*, upon the bonds secured by mortgage, dated the 9th day of June, A. D. 1856, made by said party of the second part to Charles W. Hegins, to secure $500,000, as therein mentioned, and recorded in said county, in Mortgage Book No. 6, page 407, &c.; and fourth, if any surplus should remain after payment thereof, to pay the same to said party of the second part. It being distinctly understood and agreed, that the said party of the first part shall and may make the same or other such arrangements, with reference to the time and manner of payment of the charges for freight of coal over the said road of the said party of the second part, or any part of it, as they make with reference to the charges for freight of coal over their own road, or any part thereof."

[Lucas *v.* The Sunbury and Erie Railroad Company.]

The agreement then further provided for alteration of the rates for hauling and transporting on the road; for keeping the road in repair out of its own share of the net earnings; for the providing of land for repair shops, and the building of such shops by and at the expense of the Philadelphia and Sunbury road; for throwing all damages to cars or engines, or to the road, upon the negligent party, and then further provided as follows:—

"Twelfth. That if, during the continuance of this contract, the said party of the second part shall, at any time, determine to place and use upon said road any locomotives, or to permit or suffer any other person so to do, which shall, in the opinion and judgment of the president of the said party of the first part for the time being, in any way interfere with, or endanger the use of said road by the locomotives of the said party of the first part, then it may be lawful for the said party of the first part forthwith to declare this contract at an end; and, thereupon, the said party of the second part shall be bound, and they hereby agree to purchase and pay for on delivery, and before placing any such other locomotives on said road of said party of the second part, or any branch thereof, all the rolling stock which shall have been placed upon their road by said party of the first part (or any part thereof that may be tendered to them by said party of the first part), in pursuance of and for the purposes of this contract; and also repay all sums expended for workshops used in repairs or permanent improvements upon the road, or for said party of the second part, or in pursuance or by virtue hereof.

"Thirteenth. That this contract shall take effect upon the first day of April, A. D. 1857, and be continued for the period of three years thereafter, or longer at the option of said parties hereto, provided, however, that the same may be terminated as hereinbefore mentioned, or at any time after the expiration of three years aforesaid, upon six months' notice from either party of such intention; and in the event of the termination of this contract for any reason, other than that hereinbefore specified and specially provided for, the said party of the second part shall and will, if thereto required by said party of the first part, purchase all the rolling stock, stations, tools, and permanent improvements furnished, erected, and made by said party of the first part, in pursuance of the provisions hereof; and shall and will pay for the same, such sum or sums of money as may be ascertained by valuation, to be made by arbitrators to be mutually chosen for the purpose."

This agreement was not recorded in Philadelphia, in which the principal office of the company was located; but it was recorded, on the 18th April 1857, in Northumberland county, in which the whole of the road was situated, and wherein all the business operations of the company were conducted.

[Lucas *v.* The Sunbury and Erie Railroad Company.]

Under this agreement, the Sunbury and Erie Railroad Company went on to use the road of the Philadelphia and Sunbury Railroad Company, and on the 20th June 1857, at the time of the service of the attachment, had in its hands upwards of $12,000, being the share of the latter company of the net earnings of the road.

On the trial, the court below directed the jury to find in favour of the garnishees, subject to the opinion of the court on points reserved; and subsequently, the court in *banc* entered judgment for the garnishees on the reserved points: the following opinion being delivered by HARE, J. :—

" Were I to express the inclination of my own mind, on the point now before us, I should say, that every grant or transfer by a debtor, which places the property transferred beyond the reach of an execution, and charges it with a trust for the payment of debts, is within the letter and spirit of the Acts of Assembly by which assignments for the benefit of creditors are regulated; and is, consequently, void, unless the provisions of those acts are complied with, both as it regards the nature of the trust, and the formalities necessary for its creation. The means employed in each particular instance, would have seemed to me immaterial, if the result were a transfer in trust, or a trust bottomed on a transfer; if, in short, the property ceased to be the debtor's, without vesting directly and absolutely in his creditors, and remained outstanding in the hands of a third person, who could not be compelled to render an account, or to fulfil the duties imposed upon him without a recourse to the aid of equity. In other words, had the question been still open, I should have thought that the law had said to the debtor—You may put your property in any form in which it can be seized, and applied to the payment of your debts, or you may give it to your creditors, because it will then go to pay your debts directly; but you shall not place it in a situation where it shall be neither yours nor theirs, where no execution can reach it, without submitting to those rules and restrictions which have been prescribed for the regulation of trusts of this description, and which would seem essential to prevent them from becoming a fraud upon creditors, instead of a benefit. It would necessarily follow, if this were conceded, that although a debtor might lease or hire the whole or any portion of his property, reserving a stipulated rent or compensation for its use to himself, and might even direct the payment of what was thus reserved to those to whom he was indebted, taking care to make it theirs absolutely, and avoiding the interposition of a trustee, he could not put such a reservation in the form of a trust, nor place the new interest which he had called into being, where it could not be seized by his creditors, without rendering it fraudulent as against them, and giving rise to the mischief which the statutes regulating trusts for

the payment of debts were intended to obviate.   The transfer of a rent in trust for creditors, would undoubtedly be viewed as an assignment for their benefit, and it would seem immaterial whether the reservation came first and the assignment subsequently, or whether both are the work of one and the same instant.

"These views are in a great measure sustained by the case of Watson *v.* Bagaley, 2 *Jones* 165, which decides, that a power of attorney to collect a debt and pay the proceeds over to a third person, to whom the donor of the power is indebted, will take effect as an assignment as soon as it is executed, and the debt collected, and will consequently be void, unless recorded within thirty days from the period of its execution; thus establishing, that although a power is not, and cannot be a grant or assignment, even when sustained by an interest, and consequently irrevocable (Hunt *v.* Rousmanier, 8 *Wheaton* 174; Webb *v.* Walker, 7 *Cushing* 46; Fuller *v.* Emerson, *Id.* 205), a transfer from one man to another, is not the less an assignment when actually made, because a power has been employed as the means of making it.   But the position thus taken was virtually abandoned in the subsequent case of Guy *v.* McIlree, 2 *Casey* 92, and a fund resulting from the sale of the goods of a debtor, under a judgment confessed by him, in trust for his creditors, held to be insusceptible of an attachment, because the transfer to the garnishee had been effected through the means of a confession of judgment, which, it was said, was not and could not be an assignment; a reason which must be admitted to be undeniable, whatever may be thought of the conclusions deduced from it.   It is indeed very plain, that a judgment cannot be in itself an assignment; the difficulty is to know in what respect a transfer through the means of a judgment and execution differs, when actually effected, from a transfer made in any other way.

"The decision thus made, seems to show that a transfer of property by a debtor, in trust for the payment of his debts, will not fall within the statutes which regulate assignments for the benefit of creditors, unless made in due form, and *purporting to be an* assignment, and that other modes of transfer are left open to the discretion of the parties, uncontrolled by any positive rule of law. I therefore concur with my brethren in thinking that we cannot view a hiring or letting as an assignment, consistently with the doctrine held in Guy *v.* McIlree, because the rent is reserved in trust for the payment of the lessor's debts, and thus placed beyond the reach of an attachment by his creditors, without being directly vested in them.   If it be said, that this opens a door for the evasion of the rules by which trusts for the benefit of creditors are regulated, that debtors may make long leases of their property, with a clause requiring the lessee to apply the accruing rent to the payment of debts in a prescribed order, and subject to such

[Lucas v. The Sunbury and Erie Railroad Company.]

conditions as the lease may impose; I can only answer, that the objection applies with as much, if not more force, to a transfer effected through the means of a confession of judgment, followed by an execution, under which the whole of the debtor's property is turned into cash, and placed in the hands of a trustee, beyond the reach of his creditors. In construing a statute, the presumption should always be, that nothing has been left out, which is necessary to give it effect, but when the highest court has once declared judicially that such an omission exists, the gap cannot be supplied by inferior tribunals. The rule for a new trial is discharged, and judgment entered for the defendant on the point reserved."

To this the plaintiff excepted; and here assigned the same for error.

*Speakman* and *E. S. Miller*, for the plaintiff in error.—The instrument of the 26th March 1857, is clearly an assignment in trust for the benefit of creditors: Englebert *v.* Blanjot, 2 *Wh.* 240; Watson *v.* Bagaley, 2 *Jones* 167; Weed *v.* Jewett, 2 *Met.* 608; Petch *v.* Tatem, 15 *M. & W.* 110; Calkins *v.* Lockwood, 16 *Conn.* 276; 2 *Lead. Cas. in Equity,* part 2, p. 228, &c. And being an assignment, it is void; (1.) Because not recorded in the proper county; it ought to be recorded in this county, where the principal office is. The *situs* of a corporation, or its domicil, if it can so be called, is the locality in which its principal office is found. Otherwise, a road running through a dozen different counties, would be obliged to record its assignment, within thirty days, in each. (2.) It is void, because it contains a power of revocation: Whallon *v.* Scott, 10 *Watts* 244; Riggs *v.* Murray, 2 *Johns. Ch.* 565, 576; s. c. 15 *Johns.* 371; Grover *v.* Wakeman, 11 *Wend.* 187, 196; Sheerer *v.* Lautzerheizer, 6 *Watts* 549.

*Gibbons* and *Lex*, for the defendants in error.—The paper is in no sense an assignment. It is an agreement within the protection of the Act 13th March 1847, *Brightly's Purd.* 133, pl. 154. They also cited Chaffees *v.* Risk, 12 *Harris* 432; Guy *v.* McIlree, 2 *Casey* 92; Blakey's Appeal, 7 *Barr* 449; Worman *v.* Wolfersberger's Executors, 7 *Harris* 59; Ridgway *v.* Stewart, 4 *W. & S.* 383; Manufacturers' and Mechanics' Bank *v.* Bank of Pennsylvania, 7 *Id.* 335. But even if held to be an assignment, it was properly recorded. The whole road and business operations of the company were in Northumberland county. It is true, there was an office in the city of Philadelphia, but that was merely for the meeting of the directors, who resided at different points; and they did not always meet even here. The collector and superintendent's office was in Northumberland, no freight was paid elsewhere, nor were tickets sold except in that county. As the *situs*

of the road was in Northumberland county, the agreement, if necessary to be recorded at all, was properly recorded there.

The opinion of the court was delivered by

READ, J.—If the court below had followed the inclination of their own judgment, they would have decided the principal point in this case correctly; but misinterpreting, as we think, the decision of this court in Guy *v.* McIlree, 2 *Casey* 92, they have determined that the sixth clause in the agreement between the two railroad companies, is not an assignment in trust for the benefit of creditors. By this agreement, the Sunbury and Erie Railroad Company are to run their cars and locomotives upon and work the road of the Philadelphia and Sunbury Railroad Company—to receive the tolls and charges for the local and through trades—retain one-half of the earnings for themselves, and the remaining earnings (after deducting the expenses of maintaining the roadway), when received in cash, are by the said Philadelphia and Sunbury Company assigned, transferred, appropriated, and shall be paid in manner following, viz., the said Sunbury and Erie Company shall first pay thereout unto Stephen Bittenbender seven thousand dollars with interest; next pay to Alfred R. Fisk eighteen hundred dollars with interest; and after payment thereof, pay over all other sums as they become due and payable to the Philadelphia and Sunbury Company, to Edward S. Whelen, in trust to pay, in their order the interest on three several mortgages of the said company; and, fourthly, if any surplus should remain after payment thereof, to pay the same to the said Philadelphia and Sunbury Company.

We have here property, a trustee, a trust, and creditors of an insolvent company, who are to take under it; and the simple question is, whether by an ambiguous inversion of language, the real meaning of this instrument can be so covered as to defeat the operation of a most salutary law: Dufaur *v.* Professional Life Assurance Company, 4 *Jurist N. S.* 841; 27 *L. J. Rep. Ch.*, 817. We think that the object of the framer of this clause has not been attained, and that it is a voluntary assignment, by the Philadelphia and Sunbury Railroad Company, of a part of their estate, to the Sunbury and Erie Railroad Company, in trust for some of the creditors of the assignors.

I am directed by a majority of the court (contrary to my own opinion) to say, that this assignment was recorded in the proper county, in which the assignor resided, within the meaning of the Act of Assembly. This therefore is an assignment for the benefit of all the creditors of the Philadelphia and Sunbury Railroad Company, and protects those funds in the hands of its assignor from an attachment execution. The effect of this decision is, that the judgment of the court below is affirmed, although the reasons

[Lucas *v.* The Sunbury and Erie Railroad Company.]

for such affirmance differ from those assigned by the District Court.

Judgment affirmed.