# Bittenbender *versus* The Sunbury and Erie Railroad Co.

*What Writings are Assignments for Creditors, under the Act prohibiting Preferences.— What may be assigned.—Assignment not void for Want of Trustee.—Promise to pay preferred Debt not enforced in Assumpsit.*

1. An agreement of lease by which the Philadelphia and Sunbury Railroad Company placed its entire road in the possession of the Sunbury and Erie Railroad Company, to be stocked, repaired, and run at certain rates of tolls, and after applying the proceeds to these objects, so far as necessary, then to pay the earnings remaining to certain preferred creditors of the Philadelphia and Sunbury Railroad Company, lessors, is an assignment for the benefit of creditors, within the meaning of the Act 24th March 1818, and, having been recorded within thirty days from its date, in the county wherein the road of

[Bittenbender v. Sunbury and Erie Railroad Co.]

the lessors was situated, is good as an assignment, though not intended as such by the parties.

2. The preferences in the assignment are void because forbidden by law; but for all other purposes, the assignment is good, and is not avoided, if the railroad company's lessee had no power under their charter to act as trustee; for, if so, the courts would supply a trustee who was competent.

3. An assignment, like a grant, may be made of any property of which the assignor has the actual or potential possession; and the road of the Philadelphia and Sunbury Railroad Company being property in possession, and its future earnings potential, capable of being inventoried and appraised under the Act of Assembly relating to assignments, both interests passed to and vested in the Sunbury and Erie Railroad Company for the purposes of the agreement, the legal effect of which was an assignment in trust for creditors.

4. The operative words of the instrument were not an assignment directly to the preferred creditors, but to the Sunbury and Erie Railroad Company, for them; the possession of the road was granted as property to the latter company as trustee under an express trust for the benefit of creditors: the lease, therefore, possessing all the elements of an assignment, must be construed as such.

5. Where one of the preferred creditors, whose bill was against the Philadelphia and Sunbury Railroad Company for repairs of the rolling stock, continued work for the Sunbury and Erie Railroad Company after they had taken possession, upon the promise of the president to pay him as prescribed in the agreement of lease, and, upon failure of payment, brought his action of *assumpsit* against the latter company, proving the agreement, and that the lessors had received net profits sufficient to meet his claim, it was

*Held*, that the agreement of lease being but an assignment for the benefit of creditors, and the preference therein in the plaintiff's favour being void, though the work had been done for repairs of the rolling stock, the promise of the assignee to pay according to the preferences therein expressed, was but a promise to execute the assignment, and not such as could be enforced against the Sunbury and Erie Railroad Company, whose president was the promissor.

ERROR to the Common Pleas of *Northumberland county*.

This was an action of *assumpsit*, brought July 29th 1857, by Stephen Bittenbender against the Sunbury and Erie Railroad Company, in which there was a verdict and judgment in favour of the plaintiff for $7337.16. A writ of error was sued out by the defendant, and on hearing, the judgment below was reversed, and a *venire de novo* awarded.

The material facts of the case were these :—By virtue of the provisions of the Act of 13th March 1847, the Philadelphia and Sunbury Railroad Company and the Sunbury and Erie Railroad Company, whose roads connect at Sunbury, by an agreement under their respective seals, dated 26th of March 1857, agreed that the Sunbury and Erie Railroad Company should run their cars and locomotive engines upon the railroad of the Philadelphia and Sunbury Railroad Company, and erect buildings upon the line thereof, for the accommodation of the cars and engines employed thereon, for the period of three years from the 1st of April 1857, at certain rates of tolls. The Sunbury and Erie Railroad Company were to retain a specified portion of the earnings made by them upon the road of the Philadelphia

and Sunbury Railroad Company, and the balance was to be disposed of according to the provisions of the 6th section of the agreement, which were as follows, viz. : "That the Sunbury and Erie Railroad Company shall and will pay the remaining earnings of the local trade and through trade, when received by them in cash, and not required to be retained and applied by the Sunbury and Erie Railroad Company, for the purposes herein provided; and the same are hereby, by the said Philadelphia and Sunbury Railroad Company, assigned, transferred, appropriated, and shall be applied and paid in the manner following, viz. : [but without any liability in the said Sunbury and Erie Railroad Company, to see to the application of said sums of money, or any of them], the said Sunbury and Erie Railroad Company shall first pay thereout, unto Stephen Bittenbender, the sum of $7000, being the amount of indebtedness of the said Philadelphia and Sunbury Railroad Company, to him for repairs of cars, with lawful interest thereon until paid; and after payment thereof, shall next pay to Alfred R. Fiske the sum of $1800, being the amount of indebtedness of the said Philadelphia and Sunbury Railroad Company to him for services as superintendent, with lawful interest till paid; and after payment thereof, shall pay over and deliver all other sums which would, during the continuance of the contract, become due and payable to the said Philadelphia and Sunbury Railroad Company, into the hands of Edward S. Wheeler," to be applied to the payment of the interest accruing on the mortgage bonds of the said company, in the order of the dates of the mortgages.   On the 31st of March 1857, the Sunbury and Erie Railroad Company applied to Bittenbender to make an arrangement with him for repairing their cars and engines.   Bittenbender refused to make any arrangement for this purpose until his claim against the Philadelphia and Sunbury Railroad Company, for similar services, was settled.   Mr. Merrick, the President of the Sunbury and Erie Railroad Company, then informed him of the provisions of the 6th section of the agreement between the two companies, and promised him that his claim should be paid out of the portion due or accruing to the Philadelphia and Sunbury Railroad Company as soon as sufficient for that purpose should be earned. Bittenbender then assented to the arrangement, said he was perfectly satisfied, and agreed to do the repairs for the Sunbury and Erie Railroad Company, and did do them while that company ran the road.   After the Sunbury and Erie Railroad Company had run the road for some time, Bittenbender believing that they had earned sufficient to pay him, sent his attorney to Philadelphia to receive payment, and the president of the company, after consulting the counsel of the company, and examining the agreement again, promised to pay Mr. Bittenbender,

[Bittenbender *v.* Sunbury and Erie Railroad Co.]

and said he would send his brother to make an arrangement with Mr. Bittenbender, and pay him with the notes of the company. An attachment-execution was subsequently issued out of the District Court of Philadelphia by Robert Lucas, a judgment-creditor of the Philadelphia and Sunbury Railroad Company, and served on the Sunbury and Erie Railroad Company, who then refused to pay Bittenbender, and this action was instituted. After the service of the writ in this case sundry other attachment-executions were served on the defendant. Before suit brought, the defendants had earned and received in cash more than sufficient to pay the plaintiff's claim and the amount of the execution of Lucas, and at the trial had earned more than enough to pay the plaintiff's claim, and all of the attachment-executions.

The declaration contained one special count, and the common count for "money had and received." After the award of the *venire de novo*, the plaintiff, under exception, filed an additional count, setting out more particularly the contract and promise of Mr. Merrick, the president of the road; the defendant's pleas "*non assumpsit*," and "payment with leave" remaining as before the first trial.

On the second trial the plaintiff requested the court to charge the jury:—

1. That if the jury believe that Bittenbender refused to work for the Sunbury and Erie Railroad Company until he was paid his debt against the Philadelphia and Sunbury Railroad Company, and that the Sunbury and Erie Railroad Company, by their president, promised to pay him as soon as sufficient should be earned under the agreement of the 26th of March 1857, and that in consequence of this promise Bittenbender did their repairs, then their verdict ought to be in favour of the plaintiff for the $7000 and interest.

2. That the agreement dated 26th of March 1857, between the two railroad companies, is a legal and valid agreement under the Act of 13th March 1847, and unless it was made in consequence of the inability of the Philadelphia and Sunbury Railroad Company to pay their debts, and this was the motive to make arrangement, the verdict of the jury ought to be in favour of the plaintiff.

3. That if the jury believe that the Philadelphia and Sunbury Railroad Company was indebted to the plaintiff in the sum of $7000 for repairs done to their engines and cars, the said railroad company had a right to give him a preference over the other creditors by the agreement with the Sunbury and Erie Railroad Company.

. 4. That at the time of the execution of the agreement of 26th March 1857, the rent reserved was not capable of appraisement

or of being inventoried, and the said agreement was not an assignment for the benefit of creditors, or within the acts relating to such assignment.

5. That the Sunbury and Erie Railroad Company have no power to accept an assignment for the benefit of the creditors of the Philadelphia and Sunbury Railroad Company, or of any other person, or to act as trustee in such an assignment.

The court (JORDAN, P. J.) answered all the foregoing points in the negative, and added: "The Supreme Court in this case and the case of A. R. Fiske have decided that the paper in evidence in this case, dated March 26th 1857, between the Sunbury and Erie Railroad Company and the Philadelphia and Sunbury Railroad Company, and also in the case of Lucas *v.* The Sunbury and Erie Railroad Company, reported in 8 Casey 458, is an assignment for the benefit of creditors, under the Act of 17th of April 1843. That being the decision of the Supreme Court, we are bound by it, and therefore instruct you that the plaintiff cannot recover in this action."

There was a verdict and judgment accordingly; whereupon the plaintiff sued out this writ, and assigned for error here the refusal of the court to charge as requested, and in charging that "the plaintiff cannot recover in this action."

*Joshua W. Comly,* for plaintiff, argued that, even if the agreement of March 26th 1857, were an assignment for the benefit of creditors, the defendants were not exonerated by it from their express promise to pay the plaintiff. That they had entered into the agreement voluntarily, had put their own construction on it, and agreed, if he would do their repairs, his claim against the Philadelphia and Sunbury Railroad Company should be paid as soon as the earnings of the road should be sufficient for the purpose. On Bittenbender's part (who had not seen the agreement), the contract was complied with. He announced his terms, and they were accepted by the Sunbury and Erie Company, who cannot avoid them on the ground that they mistook the legal effect of the agreement. Nor was the agreement void under the Act of April 26th 1855: Bright. Purd. 60.

The agreement of March 26th 1857 was authorized by the Act of March 13th 1847, was valid between the companies, no, matter what direction the earnings of the Philadelphia and Sunbury Railroad Company takes. Preferences in assignments were valid before the Act of 1843, and this rule remains, except so far as it is allowed by the first section of that act, which is limited to cases where the assignment is made on account of "inability to pay debts," which is not this case, as disclosed by the evidence. There was evidence of indebtedness, but none of insolvency.

4 WR.—18

[Bittenbender *v.* Sunbury and Erie Railroad Co.]

The Philadelphia and Sunbury Railroad Company had a right to make this preference. Without such a contract with some one, the road would be useless, and the claims against it almost worthless. The public interest also required that the trains·even on an insolvent company's road should be run without interruption, which cannot be done without repairs. The claim was most meritorious, and entitled to protection.

But the "agreement" was no assignment for creditors. Who were the trustees? The Sunbury and Erie Railroad Company have no power in their charter to act in this capacity, nor can they assume it: Columbia Br. Co. *v.* Kline, 6 Penna. L. J. 324. The words in the sixth section are an assignment to *Bittenbender* of so much of the earnings of the road as would pay his debt, and not for assigning anything to the Sunbury and Erie Railroad Company. They were an order to pay him his claim out of the earnings, accepted and assented to by all parties. The addition of the words in brackets shows this. The intention of the parties is manifest, and was both legal and honest, and should not be defeated by a construction of their agreement, which is not only contrary to their intentions, but injurious to a meritorious creditor. The court are respectfully asked to reconsider their former opinion in this case and in the case of Lucas *v.* The Sunbury and Erie Railroad Company, 8 Casey 458.

*J. B. & S. J. Packer,* for defendant in error, contended that the agreement between the Sunbury and Erie Railroad and the Philadelphia and Sunbury Railroad Companies was in effect an assignment for the benefit of creditors, and that the real meaning of an instrument was not to be so covered by an ambiguous inversion of language as to defeat the operation of the law prohibiting preference among creditors: citing Lucas *v.* Sunbury and Erie Railroad Company, 8 Casey 464; Dufar *v.* Proff. Life Insurance Company, 4 Jurist, N. S. 841; 27 L. J. Rep. ch. 817; Dreisbach *v.* Becker, 10 Casey 152; Englebert *v.* Blanjot, 2 Whart. 240; Watson *v.* Bageley, 2 Jones 165; Petch *v.* Tatem, 15 M. & W. 110; Calkins *v.* Lockwood, 14 Conn. 226.

If the Sunbury and Erie Railroad Company could not act as trustees, the courts have power to appoint a proper person to act in this capacity.

If this instrument was an assignment, the plaintiff cannot recover. If not, he cannot recover, for he was not a party to the contract, and was a stranger to the consideration.

There are cases which seem to sustain the principle that one for whose benefit a promise is made may sustain an action, but not broad enough to enable a stranger to a contract under seal to enforce it by an action of *assumpsit:* Blymire *v.* Boistle, 6 Watts 182; Morrison *v.* Berkey, 6 Id. 351. The "promise to

[Bittenbender v. Sunbury and Erie Railroad Co.]

pay the plaintiff" is assumed in the plaintiff's argument without proof; on the contrary, the agreement between the companies was referred to by Mr. Merrick as the basis of their arrangement, which the plaintiff was as much bound to understand as Mr. Merrick was. Again, if plaintiff abandons the written agreement, and relies on a verbal promise, he is defeated by the Act of April 26th 1855, which requires a memorandum, or note in writing, to make one party answerable for the debt of another.

The opinion of the court was delivered, October 31st 1861, by WOODWARD, J.—The opinion of this court, which defeated the plaintiff's recovery three years ago, when the case was here, has never been reported and is mislaid, but the grounds of our ruling may be inferred from the reported case of Lucas v. The Sunbury and Erie Railroad Company, 8 Casey 458. The plaintiff's debt was against the Philadelphia and Sunbury Railroad Company, his action against the Sunbury and Erie Railroad Company. The only assumpsit proved against the latter company, was the promise of its president to pay plaintiff's debt out of future earnings of the road, as prescribed by the written agreement between the two companies, of 26th March 1857. But we held that agreement to be, in legal effect, an assignment for the benefit of the creditors of the Philadelphia and Sunbury Company, and consequently, that the preferences therein expressed were void. The promise of the assignee to pay, according to the expressed preferences, was nothing more than a promise to execute the assignment, and the preferences being void, the promise could not be enforced, of course.

We are asked now to reverse our former opinion, both in this case and in that of Lucas, and to hold that the paper of 26th March 1857, is not in the nature of an assignment for the benefit of creditors. If we should so declare, the plaintiff's case would be well made out, for it was in evidence, that the Sunbury and Erie Company had received net profits enough to make good the promise of their president to Bittenbender.

The reasons for considering the lease of 26th March 1857 an assignment, are well stated in the opinions of Judges Hare and Read, as reported in 8 Casey 461, and are not to be repeated by me. Nor were they shaken by all that was urged in argument on the present writ of error.

It was said, the rent reserved and assigned by the agreement of 26th March 1857, was not capable of appraisement or of inventory under our Act of Assembly, that the Sunbury and Erie Company had no power to act as trustee, and that the operative words of the instrument were an assignment directly to the creditors, Bittenbender and Fiske, and not to the Sunbury and

Erie Company in trust for them. For these reasons, it was argued, that the instrument could not be supported as an assignment.

. If these views are not sufficiently answered by the opinions that were delivered in Lucas's case, it may be remarked, that an assignment may be well made of any property of which the assignor has the actual or potential possession. In the leading case of Grantham *v.* Hawley, Hobart 132, it was held, that a party who had an interest in land, may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant, as a parson may grant all the tithe-wool he may have in such a year, yet perhaps he shall have none. But a man cannot grant all the wool that shall grow upon his sheep that he shall buy hereafter, for there he hath it neither actually nor potentially. In Petch *v.* Tatem, 15 M. & W. 109, a tenant's assignment of his interest in crops grown in future years of the term, was supported. In Watson *v.* Bagaley, 2 Jones 167, it was said by C. J. Gibson, that any binding appropriation of a chose in action to a particular use, by any writing whatever, is an assignment, or what is the same, a transfer of the owner-ship.

. Now the purport of the paper in question here is to place the railroad of the Philadelphia and Sunbury Company in the hands of the Sunbury and Erie Company, to be stocked, run and repaired, and after applying the proceeds to these objects, so far as necessary, then to pay the remaining earnings to the preferred creditors, Bittenbender and Fiske. .

The railroad was property in possession ; its future earnings were potential. Both interests, the actual and potential, passed to the Sunbury and Erie Company, and vested in that company, for the purposes of the agreement. . We see no reason why the road and its probable earnings could not have been inventoried and appraised as well as any other estate and its future rents, issues and profits. If both a term and a rent are assignable ; if contingent and potential interests may pass by deed, they must be susceptible of both inventory and appraisement, for it would be absurd to hold that a deed could pass an interest that was too unsubstantial to be valued.

If the Sunbury and Erie Company had no power to act as trustee, this would not avoid the assignment. The court would supply a competent trustee. The question raised in the case, however, has not reference to the capacity of the assignee, but to the fact of an assignment. For the reasons before given, we think an assignment, though not intended, was in fact made. And made not directly to the creditors, as argued, but to the Sunbury and Erie Company, in trust for the creditors. Though the trust is not very distinctly defined, and all liability for mis-

[Bittenbender v. Sunbury and Erie Railroad Co.]

application of moneys is released to the assignee, yet it is too apparent to admit of a doubt that the transfer of the property was by one company to the other in trust, for the benefit of creditors. At no time could Bittenbender have claimed possession of the road under the assignment. *He* was not to earn net profits by use of it, but the Sunbury and Erie was to have the exclusive possession of the road and to earn the profits. And these when received "by them in cash, and not required to be retained and applied for the purposes herein provided for, shall be applied and paid in manner following," &c.

This was a grant, not to Bittenbender and Fiske, but to the Sunbury and Erie Company, for their use and benefit. It was an express trust; we can make nothing else of it. But the preferences are void, because forbidden by statute. For all purposes except the preferences the assignment is sustainable.

But here comes in another argument, that the preference of Bittenbender was lawful, because his bill was for repairs of the rolling stock, without which the road could not be kept up. Among execution creditors we do not allow one or more to seize and sell those appurtenances of improvement companies, without which they cannot accomplish the end of their being, but we put the creditors to process of sequestration by which the corporate property may be continued in productive use for the benefit of all creditors alike. And we do essentially the same thing here when we hold this an assignment for creditors, and cut out its preferences.

The fact that Bittenbender's labor was expended on cars, entitled him to no preference in the assignment. It is hard to deny him a preference for so meritorious a claim, and it is with regret that we lay down the law against him. But we have to declare the legal effect of his position. He comes in under the assignment. The promise he lays in his declaration, was a promise founded upon the assignment. The law forbids preferences in such assignments. The plaintiff's action is to enforce one of these preferences.

To sustain this action would be to repeal a statute.

The judgment is affirmed.

STRONG, J., dissents.