# Love, Receiver, v. Clayton et al., Appellants.

*Assignment for creditors—Combination of creditors—Corporations—Agreement of certain creditors with corporation—Fraud—Several instruments construed as assignment—Act of April 17, 1843, P. L. 273, and April 16, 1849, P. L. 664—Preference.*

1. An assignment for the benefit of creditors may consist of several instruments in different forms and bearing different technical names, which, when read together in the light of the attending circumstances and the related acts of the parties, are seen to constitute one transaction, and indicate an intention to assign the property for the benefit of creditors.

2. Courts will not allow the law to be evaded by sham departure from the general form of assignment; and, when the transaction is substantially an assignment for creditors, the substance rather than the form must be regarded.

3. Where a committee of certain creditors of a corporation, in financial trouble, enters into an agreement with the company, by which the committee secures the control of the corporation through stock transfers without transfer of title to its property, for the

purpose of continuing its business or disposing of its property for the benefit of the creditors whom the committee represents, such an agreement is, in effect, an assignment for the benefit of creditors, and if the property is sold, the proceeds are a trust fund for the benefit of all the creditors of the corporation.

4. Equity will give a most liberal construction to the intent of such acts and the manner by which that intent is carried into execution, where the rights of innocent persons are jeopardized.

5. If the committee distributes the fund among the creditors whom they represent, its members may be held personally liable to creditors who were not allowed to participate.

6. In such case, a creditor not a party to the agreement who was a stockholder and took part in the stockholders' meeting authorizing the sale, cannot dispute the validity of the sale, but his acts do not prevent him from asserting his rights in the fund raised by the sale or in the moneys collected by the committee in administering the property.

7. The committee, in such case, cannot assert that they were merely agents or attorneys without obligation to account to any one but the particular creditors whom they represented. They were in fact trustees for all the creditors.

8. Such a transaction cannot be construed as lawful preference of some creditors over others.

9. While a preference to creditors may be sustained under given conditions, even when it prevents other creditors from obtaining payment of their claims, if there be an honest intent to pay the preferred debt, yet courts will seize any opportunity to strike down such a transaction where fraud is intended.

Argued April 19, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 143, Jan. T., 1926, by defendants, from decree of C. P. No. 4, Phila. Co., Sept. T., 1924, No. 11,-127, in case of Alexander Love, Jr., Receiver for United States Fashion & Sample Book Co. v. Paul Clayton et al. Affirmed.

Bill for accounting and discovery. Before McCULLEN, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Edward Hopkinson, Jr.,* with him *Dickson, Beitler & McCouch,* for appellants.—Buehler was estopped: Creech Bros. Lumber Co., 240 Fed. 8; Bennet & Co.'s Assigned Est., 21 Pa. C. C. 609.

The agreement was not an assignment for creditors: Johnson's App., 103 Pa. 373; Schaefer's Est., 194 Pa. 420; Beans v. Bullitt, 57 Pa. 221; Lockhart v. Stevenson, 61 Pa. 64; Wood v. Kerkeslager, 227 Pa. 536; Fallon's App., 42 Pa. 235; Chaffees v. Risk, 24 Pa. 432; Claflin v. Maglaughlin, 65 Pa. 492.

Preference in payment to creditors or their agents were entirely proper: York Co. Bank. v. Carter, 38 Pa. 446; Miller v. Shriver, 197 Pa. 191; Lake Shore Banking Co. v. Fuller, 110 Pa. 163.

Buehler became creditor at too late date to complain even if transaction had been an assignment for the benefit of creditors: McBroom & Wood's App., 44 Pa. 92; Miller's Est., 82 Pa. 113; Chestnut St. Trust Co.'s Assigned Est., 217 Pa. 151.

*Grover C. Ladner,* of *Ladner & Ladner,* for appellee.— This case has all the elements which go to make a voluntary assignment under the Act of 1843. There was a declaration (1) of trust, (2) made by debtors, (3) on account of present inability to pay their debts, (4) with intent to prefer certain creditors over others. It was immaterial, as was suggested by the court below, that no residuary interest was expressly reserved in favor of the assignors; for that was implied in the character of the transaction. The assignment does not purport to have been made in adjustment and satisfaction of the debt. Directness would have been a badge of good faith and prima facie valid; but the creation of a trust raised a suspicion of collusion which the statute turns to the benefit of all the creditors in proportion to their re-

spective demands in accordance with the law relative to voluntary assignments.

No particular form of words is necessary to constitute an assignment for the benefit of creditors. Any instrument which contains the essential elements will be so considered: Johnson's App., 103 Pa. 373; Fallon's App., 42 Pa. 235; Mann v. Wakefield, 179 Pa. 398; Bittenbender v. R. R., 40 Pa. 269; Lucas v. Sunbury R. R., 32 Pa. 458.

There was an assignment in trust: Wallace v. Wainwright, 87 Pa. 263; Kendall v. Klaperthal, 202 Pa. 596.

There was an intent to prefer certain creditors over others: Mann v. Wakefield, 179 Pa. 398.

OPINION BY MR. JUSTICE KEPHART, June 26, 1926:

The United States Fashion & Sample Book Company, for brevity called Sample Company, in 1917, found its business in doubtful condition. After an investigation by some of the larger creditors, in January, 1918, an agreement was entered into between the company, three persons styled "officers," "such" creditors as would join, and three persons designated as "committee." Seventy per cent of the stock was to be transferred to the committee, to be elected directors in place of the "officers" who had resigned. They were to continue the business of the company, or dispose of it in a manner specified.

The terms of the agreement were carried out, the committee running the business until 1919. The operation not being profitable, the "committee," having received an offer for the entire business, including all property, decided to sell. The creditors signing the agreement accepted the offer, as did a majority of the stockholders, 1,300 shares held by the committee out of a total 1,600 shares approving the sale. It was consummated and the price received, $108,000, was turned over to the creditors' committee. This sum, with other items, brought the total assets to $113,000 in the committee's hands,

which was distributed among the creditors named in the agreement.

In 1916, the Sample Company had contracted with Buehler for his services for a period of ten years. He agreed to purchase and pay for 100 shares of preferred stock; in case his services were not satisfactory, the company agreed to repurchase this stock. Buehler continued in its employ until 1919, when the above sale of all the company's assets took place. His service being thus discontinued, Buehler brought suit against the Sample Company on his contract, and recovered judgment. The creditors' committee did not consider his claim in distributing the $113,000. Buehler then secured the appointment of a receiver who filed this bill to compel the "committee" to account for all moneys received during their committeeship or as directors or officers of the company. An order was so made; it is here appealed.

The court below, after a very thorough consideration of the case, concluded the agreement of 1918 and all matters incidental thereto constituted an agreement for the benefit of creditors within the meaning of the Acts of April 17, 1843, P. L. 273, and April 16, 1849, P. L. 664, section 4. This conclusion is vigorously assailed because the transactions, it is claimed, lacked the essentials of such an assignment in that the committee were merely agents of the creditors and the proceeds of the sale were turned over to them as agents for their principal. It was denied Buehler had any standing as a creditor or otherwise to demand an accounting, or that there were any creditors who could demand it; and even if he was a creditor, he could not participate in the fund, as the funds in the committee's hands were there through a lawful contract that debarred other creditors.

Buehler, whose acts as a creditor brought on the present litigation, took part in the stockholders' meeting when the property was sold, acting as a teller and voting his common stock for the sale. He cannot now be heard to dispute the validity of that sale, question its

propriety, or raise any other matter as to its regularity: Glenn v. Trees, 276 Pa. 165; In re Creech Bros. Lumber Co., 240 Fed. 8. But such acts do not prevent him from raising questions as to the annulment of his own contract,—a matter already adjudicated,—the distribution of the money received from the sale, or an accounting for money received during the course of administering the Sample Company's property, provided a trust relation existed or there was an assignment for the benefit of the creditors.

To properly grasp the situation, we must bear in mind exactly what took place. Here we have a company, in failing circumstances, unable to liquidate its accounts. A committee of its creditors, after conference with the principal stockholders, conceived the idea of taking the property out of the management and control of the stockholders and their directors and placing it and the ownership of more than two-thirds of its stock in the hands of third persons. They were to run the business for the best interest of the creditors until all the debts were paid or if necessary take such action in voluntary or involuntary liquidation or sale as would produce like results. The business was unsuccessful, the property was sold and the assets distributed among the creditors signing the agreement. Appellants contend the committee acted merely as agent or attorney, without obligation to account for the purchase money to any one but their principals, the creditors. The money was received for them, and no other persons, and there never was any transfer of company property, qua property, to or through the creditors' committee. At all times title remained in the corporation, and, when turned into cash, the latter was handed to the committee of the company for distribution among the creditors, under the agreement. Distribution was nothing more than payment of their claims. Though this may have been a preference and other creditors went unpaid, there is nothing in law to prevent a preference, where the end sought to be ob-

tained was, the payment of a claim, not in bad faith, or with an intent to hinder, delay or defraud creditors.

In considering whether the agreement of 1918, including the consequent operation of the business under the direction of the creditors' committee, with the related facts, constituted an assignment for the benefit of creditors, equity will give a most liberal construction to the intent of the act, and the manner by which that intent was carried into execution, especially where the rights of innocent persons are jeopardized.

An assignment is described as "a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein": 5 C. J. 836. It also has been defined as "a transfer or setting over of property, or of some right or interest therein, from one person to another, and, unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel or other thing": Griffey v. New York Cent. Ins. Co., 100 N. Y. 417, 422, 3 N. E. 309, 311; Schaefer's Est., 194 Pa. 420; Johnson's App., 103 Pa. 373. No formal deed of assignment transferring property to a trustee for the benefit of creditors passed between the parties. But no such deed appeared in Mann, Moon & Co. v. Wakefield, 179 Pa. 398; Bittenbender v. The Sunbury and Erie R. R. Co., 40 Pa. 269; or Lucas v. The Sunbury and Erie R. R. Co., 32 Pa. 458.

While no formal assignment of property was made, by the agreement and subsequent acts, the committee was given all the power that might possibly be obtained under a formal deed. While title to it was not in them, their control, dominion and authority over it under the agreement was complete. It was provided (clause 1) that the creditors' committee, as majority stockholders, might vote and otherwise deal with the shares of stock in the interest of the creditors, and that they might "cause the company to take such action, either in continuance of the business of the company or in voluntary

or involuntary liquidation as the committee might think best," and until liquidation or sale the stock was to be held "until all the purposes of this agreement have been fulfilled and all the debts now existing or incurred shall have been paid." The company, by the agreement, undertook to and did have transferred the evidences of ownership of property, namely, the shares of stock, and agreed, to and with those same persons, that the committee should sell the concern for creditors. The committee used the power in the agreement to elect themselves directors, and as such they conducted the company business. The offer to buy was made to the committee for all "right, title and interest" of the "committee." It was afterwards approved by them as directors and stockholders. They as a committee were empowered by the creditors to proceed. The committee, acting as directors, authorized the execution of the bill of sale. As directors, they transferred to themselves, as a committee, the proceeds of sale and remaining assets in cash of the company for distribution among the creditors. The committee were not all the creditors of the corporation nor any considerable part of them. Considering the ultimate results in view, it seems clear that a trust was intended and carried out by the creation and execution of these powers.

The indicia of ownership, with absolute power to dispose of the company assets, was placed in the committee's hands. They had undisputed dominion over the property, though it was necessary to work out the formal sale through corporate form. While they as directors represented the corporate interests, and, as stockholders, through the stock assigned, the real owners, all was joined with, and subject to, their primary relation as trustees for the benefit of creditors. What the agreement contemplated and what was actually done was more than a mere transmission of property for the purpose of custody for management or the creation of a joint trusteeship for the benefit of each other: Wood v.

Kerkeslager, 227 Pa. 536. It was more than a direct assignment of property to creditors, in satisfaction of a debt: Henderson's App., 31 Pa. 502.

Courts will not allow the law "to be evaded by any sham departure from the general form of assignment; and when the transaction is substantially an assignment for the benefit of the creditors, involving no other important purpose that would be prejudiced by bringing it under the Act of 1818 [now 1836], the substance rather than the form must be regarded": Fallon's App., 42 Pa. 235, 255. Equity has a way of looking through corporate protections where fraud is lurking about; it does not hesitate to smash the formal protection to reach the truth and the parties, where no innocent persons are injured thereby: Kendall v. Klapperthal Co., 202 Pa. 596, 607; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265, 269.

But it is asserted that the instrument did not create a trust; nor did it name a trustee. "To constitute an assignment in trust for the benefit of creditors, within the meaning of the Act of March 24, 1818, there must be a transfer of the property assigned to another...... There must be a trust also created for the creditors of the assignor, and a trust which is enforceable in equity": Beans v. Bullitt & Fairthorne, 57 Pa. 221, 229. A trust exists where the legal title is in one person and the equitable interest in another: Wallace & Krebs v. Wainwright & Co., 87 Pa. 263. And the latter may be composed of persons standing in different relationships; the one may be subservient to the other as stockholders to creditors.

Like an assignment for creditors, the parties, transferring the stock, had a residuary interest, if the business was successful. In this aspect they were secondarily interested as cestuis que trust. We are not disposed, in a matter so important as the one here to be decided, to place our decision under this state of facts on such an illusory consideration as the execution of a formal paper transferring property of a corporation to a trustee com-

mittee for the benefit of creditors. The law will regard the instrument in question, with the related acts, as constituting a transfer of property, real and personal, in possession, as effectively as if a deed of trust had been executed with all the forms of law.

The idea of a trustee as here intended cannot be disguised under the name of agent, or attorney, though both may have such qualities attached to their duties. Call the relation what we please, equity will determine its effect.

The essentials for an assignment for the benefit of creditors has been pointed out in Mann, Moon & Co. v. Wakefield, supra, 400, as follows: "This case has all the elements which go to make a voluntary assignment under the Act of 1845. There was a declaration (1) of trust; (2) made by debtors; (3) on account of present inability to pay their debts; (4) with intent to prefer certain creditors over others." No residuary interest expressly reserved in favor of the assignors is necessary; it was implied in the character of the transaction. The assignment does not purport to have been made in adjustment and satisfaction of the debt. Here we have an inability to pay debts; the persons, who were to receive the property, were named, and certain creditors were preferred. We need not consider separately the sale and payment for the property. We rest our conclusion upon all the facts before us; but, where creditors intervene, these circumstances, in connection with the sale and payment, would weigh materially in creating a trust which the statute turns to the benefit of all creditors.

The cases cited by appellants do not control. The instant case is not like a pledge by way of a mortgage (Bryant's App., 104 Pa. 372), nor the placing of a life insurance policy with a beneficial interest in a third person to protect certain creditors (Schaefer's Est., supra), a confession of judgment to one in trust for others (Breading v. Boggs, 20 Pa. 33; Lake Shore Banking

Co. v. Fuller, 110 Pa. 165), a pledge of property as security for future loans (Griffin v. Rogers, 38 Pa. 382), or a mortgage of property in trust for creditors (Johnson's App., supra).

While a preference to creditors may be sustained under given conditions, even where it prevents other creditors from obtaining payment of their claims, if there be an honest intent to pay the preferred debt (The York County Bank v. Carter, 38 Pa. 446; Miller v. Shriver, 197 Pa. 191, 195; Lake Shore Banking Co. v. Fuller, supra, 163), courts will seize any opportunity to strike down such a transaction where fraud is intended, as a violation of the statute. There must be an intent to delay, hinder and defraud creditors. In the present case, take the entire series of transactions. It was not a transfer to pay those who signed, but it set up a scheme whereby "all" creditors would be paid.

The court below was clearly right in holding "an assignment for the benefit of creditors may consist of several instruments in different forms and bearing different technical names, which, when read together in the light of the attending circumstances, are seen to constitute in fact but one transaction, indicating an intention on the part of the debtor to assign his property. The several instruments may be made to one or more persons at different dates, provided the circumstances warrant the conclusion that they are all the result of a preëxisting purpose to assign the insolvent's property for the benefit of his creditors."

The court below was correct in ordering an accounting and finding that Buehler was a creditor. Appellants knew his contract was in existence; they should have known that a sale of the property must be followed by a claim under his agreement. Actual notice was given before distribution. But there were other creditors, and the owners of the 200 or more shares of stock not present at the sale. We are in accord with the rule laid down in Bulifant's Est., 50 Pa. Superior Ct. 373, as

to composition by creditors, or the creation of a protective committee to preserve corporate property and thus insure payment of debts. There is no law to prevent this and their acts in good faith are entitled to protection, but they cannot, as here, openly disregard creditors on the basis of preference, and hope to be protected by the law.

The learned chancellor made a careful and exhaustive study of the case, and the decree should be affirmed, which is accordingly done, at the cost of appellants.