## Lloyd's Appeal.

1. Although a party may, by express contract, waive his right of set-off, and such a contract, founded upon a consideration, would be binding upon him, yet he can be deprived of that right by nothing less than a contract. Reed *v.* Penrose's Executrix, 12 Casey 234, followed.

2. A. having become indebted to his employer, B., settled an account and gave B. a judgment-note for the amount of the indebtedness, and remained for eight months afterwards in B.'s employ. He then quit the employment, but shortly thereafter resumed work under an agreement that he was to be paid his wages as fast as he earned them, without regard to any claim which B. had against him. B. died subsequently, and in the distribution of his estate A. claimed and was allowed his wages from the date of the note : *Held*, that this was error ; that any portion of the wages unpaid during the eight months, in the absence of any express contract to the contrary, should have been applied to the judgment.

October 25th 1880. Before SHARSWOOD, C. J., MERCUR, GOR-DON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Cambria county :* Of October and November Term 1880, No. 126.

Appeal of Harriet P. Lloyd, widow, and others, administrators of Thomas J. Lloyd, deceased, from the decree of the court confirming the report of the auditor appointed to distribute the funds in the hands of said administrators.

Thomas J. Lloyd, the decedent, was a lumber merchant, and carried on this business for many years previous to his death, on the 6th of March 1878. For about six years previously he had D. H. Kinkead in his employment as clerk and superintendent, who, as such, had authority to receive and pay out money. On the 14th September 1875, the parties made a settlement, and Kinkead was found to be indebted to Mr. Lloyd in the sum of $1286.85, for money of his employer retained by the appellee in excess of his salary to that date.

For this amount Kinkead gave to the decedent his judgment note, bearing date the day of the settlement (September 14th 1875), and payable one day after date : on which note judgment was entered in the Common Pleas of Cambria county on the 8th of June 1876. Kinkead continued in the employment of decedent until on or about the 22d of May 1876. At this time, and without previous notice, he left the service of the decedent. Two or three days afterwards he returned to the office of his former employer, when the parties entered into a parol agreement that Kinkead should resume his services at a salary of $1200 per annum, which was to be paid to him ·as fast as earned.

At the time he resumed his service (24th or 25th of May 1876), he was indebted to the decedent the amount of the note previously

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| mentioned, | . | . | . | . | . | . | . | $1286.85 |
| Interest September 15th 1875, | . | . | . | . | 53.61 |

$1340.46

The appellants contended before the auditor that the salary earned by Kinkead from the time of settlement (September 14th 1875) to the 22d of May 1876, the time he left, and before the parol bargain was made, less the payments made on account, should be applied as a set off or credit on the judgment; that the contract of the 24th or 25th of May 1876, that the salary of the appellee should be paid as he earned it was entirely prospective. Kinkead contended that this agreement was also retrospective in its terms.

The auditor found that the parol contract was retrospective and awarded to the appellee the whole of his salary, deducting payments made on account; to which report the appellants excepted, and the exceptions being overruled and the report confirmed absolutely, this appeal was taken therefrom.

*George M. Reade*, for appellants.—The finding of the auditor and the confirmation of his report by the court, deprived the estate of the decedent of the right of set-off, to the extent of the unpaid salary from the 15th September 1875 to the 24th or 25th May 1876, without consideration, and the decree was, therefore, clearly erroneous : Rhoads *v.* Frederick, 8 Watts 448, 450 ; Case *v.* Cushman, 1 Barr 241, 246 ; Snyder *v.* Liebengood, 4 Barr 305; Davis *v.* McGrath, 10 Id. 170, 172; Fisher *v.* Seltzer, 11 Harris 308.

*F. A. Shoemaker* and *John P. Linton*, for appellee.—The deceased could " waive his right to set off or defalcate the indebtedness to him" of Kinkead against the said Kinkead's demand for the wages of his labor, and such an agreement is binding and can be enforced: Louden *v.* Tiffany, 5 W. & S. 367 ; Henniss *v.* Page, 3 Whart. 275 ; Reed *v.* Penrose, 12 Casey 214. That he made such an agreement, thus to waive his right of set-off, is found by the auditor as a fact from the evidence.

While the auditor has found as a fact that the agreement made by Thomas J. Lloyd, the decedent, was retroactive, the appellee could have maintained his right to the fund allowed him, even if the agreement had been merely prospective. In the absence of any specific appropriation by the parties, the amount paid by Thomas J. Lloyd to the appellee, and charged against the latter on the books of the former, would be by the law appropriated " in discharge of the earliest liabilities of a running account :" Speck *v.* Commonwealth, 3 W. & S. 328 ; Berghaus *v.* Alter, 9 Watts 394; Peirce et al. *v.* Sweet, 9 Casey 157.

Mr. Justice GORDON delivered the opinion of the court, November 8th 1880.

If the contract made between Thomas J. Lloyd and D. H. Kinkead, the appellee, on or about the 24th of May 1876, was in

its terms retrospective, that fact must have been established by some evidence not now exhibited to us. We have examined the testimony as it is found in the record before us with some care, and by it a condition of things about as follows appears : Kinkead was in the employment of Lloyd altogether about one year, commencing on the 15th of September 1875. On the 22d of May following, Kinkead, having for some reason become dissatisfied, abandoned that employment. Soon after this, the agreement, which forms the subject of the present controversy, was made. Its terms are detailed by two witnesses, Thomas Davis and John G. Bearer. The first of these says that Lloyd asked him to see Kinkead and induce him, if he could, to return to his employment, and, in the language of the witness, "He said that if he came back, he would pay him the money as he earned it, without regard to any claim he had against him ; that he could have it whenever he wanted it, that he did not want Harry to work for him and credit it on anything." The witness further says that he communicated this to Kinkead, and advised him to return, and that he did go back and remain with Lloyd for a short time. Bearer, the second of the above named witnesses, says he heard a conversation which occurred between these parties, and narrates it thus : " Harry said he wished his money as he earned it, or he couldn't live. They were talking about Harry's indebtedness at that time, and Tom and he agreed he wouldn't take his wages on that. I don't remember that he said he would give him enough to live on and not credit it on his indebtedness. Harry was to go into the yard and work as he was working before. I heard nothing of that (that he would never collect Harry's indebtedness of him). That was the particular bargain, that he was to have his wages as fast as he earned them ; nothing was said about how often he was to be paid—that was the big trouble between them ; it was to be paid just as he earned it. I can't say how long Harry remained after that. I think it was in May or June this conversation took place."

This, then, was the bargain between these parties, and we say with Mr. Justice STRONG, in Reed *v.* Penrose's Executrix, 12 Casey 234, that though a party may, by express contract, waive his right of set-off, and such a contract, founded upon a consideration, would be binding upon him, yet he can be deprived of that right by nothing less than a contract. But the contract in the present case was wholly prospective. Kinkead was to return to his employment with Lloyd, and was to have his wages as he earned them without set-off on his indebtedness to Lloyd. In all the testimony there is not so much as a hint that this contract was intended to affect Lloyd's right of set-off as to the wages which had been previously earned. Indeed, the principal object at which Kinkead aimed, so far as we can see, was to prevent in the future what had occurred in the past, the application of his wages, or any

part of them, to the judgment of his employer. This he accomplished by the bargain which was made; he returned to his former position, and now, if he gets what he contracted for, he should be content. •

He was entitled to his wages in full, less the payments made upon them from the time he returned to Lloyd's employment in May 1876, until September 26th of the same year, but from September 15th 1875, to the 22d of the succeeding May, any of his wages remaining due and unpaid, are properly applicable to the Lloyd judgment.

> The decree of the court below is now reversed and set aside at the costs of the appellee, and it is ordered that redistribution be had in accordance with the above opinion.