Smith et al., Appellants, *v.* Stricker.

182

Argued March 17, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Mark T. Milnor,* for appellants.

*Earl V. Compton,* for appellee.

OPINION BY PARKER, J., July 10, 1936:

The plaintiffs, liquidating trustees of certain assets of the Union Trust Company of Pennsylvania, on July

23, 1935, brought an action in assumpsit against Mary Dreese Stricker, to recover the balance due on her collateral promissory note dated March 13, 1935, due thirty days after date. Defendant filed an affidavit of defense admitting the amount due on the note and setting forth a set off and counter claim. To the set off and counter claim plaintiff filed an answer in the nature of a demurrer raising questions of law and on motion the court below entered judgment in favor of the defendant as to the amount of plaintiff's claim.

We will state such of the facts, agreed upon by stipulation filed, as are essential to a disposal of this appeal. On February 20, 1930 defendant borrowed from the Union Trust Company of Pennsylvania (hereinafter described as Trust Company) $500 on her collateral promissory note. The note was renewed and payments on account were made, the last renewal being on March 13, 1935. On July 28, 1930, defendant purchased three mortgage bonds from the Trust Company, two for $1,000 each and one for $500. The bonds were accompanied by an assignment from the Trust Company wherein it guaranteed the payment of both principal and interest "when and as often as the same is so due". The obligors in the bonds defaulted in payment of interest on $2,000 of the bonds on January 1, 1933 and on $500 on July 1, 1933, and defaulted in payment of principal to the amount of $2,000 on July 31, 1934 and $500 on August 13, 1927. The first demand for a set off by defendant was made to the liquidating trustees of the Trust Company on May 20, 1935, about two months before this action was started.

The Trust Company went on a restricted basis on March 14, 1933 pursuant to the provisions of the Sordoni Act. It continued to so operate until March 25, 1935, when a "Plan" described as a reorganization was put into effect pursuant to the provisions of the Act

of May 4, 1933, P. L. 271 (7 PS 109 et seq.). The Plan was approved as required by said act of assembly by the Department of Banking of the commonwealth, by the holders of at least 75% of the outstanding shares of capital stock of the Trust Company, and by depositors and creditors to whom was due 75% of the total of liabilities to depositors and other creditors, excluding certain secured creditors and depositors. The appellee was familiar with the Plan but did not join in the agreement.

The depression through which we have been passing and the difficulties in which various banking institutions found themselves have resulted in the formulating of a number of plans for reorganization, rehabilitation and liquidation of banks and trust companies. The Plan with which we are concerned in its general details has been much used. It provided for the organization of a new corporation known as Capital Bank and Trust Company with a capital, surplus and undivided profits aggregating $465,000. The new bank contracted to pay in full certain preferred creditors and to pay to restricted depositors not entitled to a preference, 35% of their deposits in form of cash and stock, subject to certain modifications not here important. In return the Trust Company, the old bank, transferred to the new bank assets approved by the Department of Banking in an amount sufficient to cover the deposits assumed by the new bank. All of the remaining assets were then transferred to plaintiffs as trustees for the depositors, general creditors (including holders of guarantees) and stockholders, for the purpose of orderly liquidation and distribution to claimants in the order named.

The question raised is one involving a right of set off and the argument is presented to us in two phases. It is contended by the appellants that they are not indebted to the appellee and therefore no right

of set off exists and again that even though such right of set off would ordinarily be available, it was lost by the specific terms of the reorganization agreement. We will consider these contentions in the same order.

Appellants first contend that the right of set off does not exist in favor of defendant since the note has passed into the hands of a new party,—that is, that it has been transferred by the old bank to the plaintiff trustees. It will be noted that the note which is the basis of this suit was transferred to the trustees and not to the new bank. The principle that an obligor in a bond or note cannot defalcate against the assignee for value of a bond or note a claim of set off which he holds against the original obligee is well settled *(Blair v. Mathiott,* 46 Pa. 262) but has no application here. The trustees by the very terms of the plan are voluntary assignees who have received the property including the note in suit for the purpose of liquidation and distribution only. "It is well settled in this state, by numerous decisions, that a voluntary assignee is not a bona fide purchaser for value. He is the mere representative of the debtor, enjoying his rights only, and is bound where he would be bound": *Smith v. Equitable Trust Co.,* 215 Pa. 418, 420, 64 A. 594. Also see *Wright v. Wigton,* 84 Pa. 163; *Love v. Clayton,* 287 Pa. 205, 134 A. 422, and *In re Lancaster Trust Co.,* 323 Pa. 107, 186 A. 367.

"It is well settled law in Pennsylvania that in the case of an insolvent corporation, the rights of the parties are fixed as of the date of the appointment of the receivers": *Blum Bros. v. Girard Nat. Bk.,* 248 Pa. 148, 153, 9 A. 940; *American Radiator Co. v. Modern Utilities Co.,* 108 Pa. Superior Ct. 96, 100, 164 A. 925. When the bank went on a restricted basis on March 14, 1933, payment of principal in the amount of $500 and interest on $2,000, for which the Trust Company was surety, was in default. When the Plan went into

effect on March 25, 1935, payment of both principal and interest on the entire $2,500 was in default. When the defendant's note became due at either of these dates she had a right of set off sufficient to cover her obligation to the Trust Company. It is true that it was an exercisable right and that it did not become effective until she sought to exercise it. This she did, however, prior to the institution of this suit. The contract of the Trust Company whereby it guaranteed the payment of principal and interest was a contract of suretyship since it did not contain in substance the words: "This is not intended to be a contract of suretyship", or the words: "This portion of the agreement is not intended to impose the liability of suretyship": Act of July 24, 1913, P. L. 971, §1 (8 PS 1).

Appellants suggest in their brief that the giving of the renewal notes waived her right of set off. We answer this contention in the language used by the Supreme Court in *Lloyd's Appeal*, 95 Pa. 518: "This, then, was the bargain between these parties, and we say with Mr. Justice STRONG, *in Reed v. Penrose's Executrix*, 12 Casey 234, that though a party may, by express contract, waive his right of set off, and such a contract, founded upon a consideration, would be binding upon him, yet he can be deprived of that right by nothing less than a contract." The renewal of the notes was not inconsistent with the retention of the right of set off when the occasion arose for its exercise. The defendant had other security in the form of the obligations of debtors in the bonds. There was not any inconsistency in her delaying insistence upon fulfilment of the contract of suretyship until she was satisfied that the different obligors would not pay. The Trust Company was not injured in any respect by the delay nor was the situation between the parties changed. The facts presented by the appellants come far short of showing an express

contract or in fact any contract on the part of the defendant to waive her rights.

It appearing that the defendant did not lose her right of set off in the absence of a contract, it remains to consider the second contention of appellants that the so-called Plan precluded the right of set off. This makes necessary further reference to the terms of the Plan. Article X in part provides: "The word 'Guarantees' wherever it appears herein shall be interpreted to mean the guarantees of any nature whatsover given by the ...... Union Trust Company of Pennsylvania, including the guarantees attached to: Guaranteed Mortgage Bonds, Guaranteed Bonds ...... and the term 'Guaranteed Certificates' shall be interpreted to include Guaranteed Mortgage Bonds, Guaranteed Bonds ...... Holders of 'Guarantees' shall release the ...... Union Trust Company of Pennsylvania from any and all liability for or on account of said 'Guarantees' and in exchange therefor shall be issued Guarantee Deficiency Participation Certificates which as set forth in Article XI hereof will be a lien against the assets transferred to the respective trusteeships as hereinbefore provided, representing the difference between the amount then due on 'Guaranteed Certificates' and the amount realized and paid to the holders thereof from the specific assets securing the same." It was provided by other sections that Depositors' Participation Certificates, Creditors' Participation Certificates, Guarantee Deficiency Participation Certificates and Shareholders' Participation Certificates should be issued to the respective classes indicated by the name. The assets are to be distributed first to Depositors' Participation Certificates, second to Creditors' Participation Certificates and Guarantee Deficiency Certificates, and third to Shareholders' Participation Certificates.

Since the defendant did not join in or personally assent to the Plan, it follows that her right to a set off

cannot be affected unless by action taken by authority of the legislature acting within constitutional limitations. The authority suggested is the Act of May 4, 1933, P. L. 271 (7 PS 109-115), and it is entitled "An act authorizing and regulating the reorganization of banks and trust companies." It is provided therein that any plan for the reorganization of a bank or a trust company which the Department of Banking shall deem equitable and to the best interests of all depositors, other creditors and stockholders may be adopted subject to any terms prescribed by the Department of Banking in manner provided in the act. It is further provided that the plan shall not be valid unless it is also sanctioned by 75% of the holders of outstanding shares of capital stock of the bank or trust company and depositors and other creditors to whom is due at least 75% of the total amount of all liabilities of the bank or the trust company to depositors and other creditors.

The constitutionality of the act is not here attacked. In *Doty v. Love,* 295 U. S. 64, 55 S. Ct. 558, a case involving a statute of the State of Mississippi containing provisions similar to our act, Mr. Justice CARDOZO in holding that act constitutional stated: "If we look to the surface of the statute and no farther, there is not even colorable basis for the argument that the Constitution is infringed. All that the statute does upon its face is to change the method of liquidation." He then remarked: "The Act of 1932 being valid on the surface, the question remains whether it has been so applied or interpreted in the adoption of this plan as to bring out defects that were lurking underneath." Just so it is necessary in considering our Act of 1933 as well as the attempted action under it by means of the Plan to see that neither is so interpreted as to deprive the defendant of constitutional rights.

The act as well as the action of 75% of the depositors

and general creditors is upheld by the decisions as a just and equitable *method* of distribution of assets. So interpreting the Plan we are of the opinion that the majority with the assent of the Department of Banking did not attempt to deprive either depositors or general creditors (including holders of guarantees) of the right of set off, but did fix the amount of the respective participation certificates to be received by depositors and other creditors in the amount of such claims after the allowance of any set off to which they were respectively entitled under the law.

In cases of insolvency, questions of the right of set off are constantly arising. This is peculiarly so in the case of insolvent banks and trust companies for the books are full of such cases. Yet there is not a word in the Act of 1933 or in the Plan which refers to the right of set off or suggests that either depositors or general creditors are to be deprived of such a valuable and well established right. In fact, there is no attempt to change the order of preference on distribution. It is rather but a *method* intended to convert the assets to the best advantage of all interested parties. If we were to adopt the interpretation suggested by appellants all depositors and creditors would be deprived of their right of set off against any obligations that they may owe to the Trust Company and even though they may have previously made claim therefor. To so interpret the Plan would make it more than a method of distribution and would change the substantive law of the commonwealth governing the order of distribution and preferences against the will of non-assenting creditors. We cannot believe such was the intention of either the legislature or the parties to the Plan. The result appears even harsher when we consider that the Act and the Plan each provide for the consent not of 75% of both holders of guarantees and general creditors, but 75% of their combined holdings. This would

enable depositors and general creditors to deprive the holders of guarantees of a vested substantive right. It is probable that there will be little if any funds for distribution to general creditors. If such should be the case they would receive no advantage from the Plan to off set their loss. Even when two constructions are warranted by the wording of a contract or law and one would work a wrong or result in the doing of an injustice and the other would be fair and equitable, the one should be adopted which comports with justness, fairness and equality.

Judgment affirmed without prejudice to appellee to receive any balance that may appear to be due her on the balance of her counter claim on distribution of the assets by the trustees.